Michael S. Rosenblum, SBN 126284
LAW OFFICES OF MICHAEL S. ROSENBLUM,
A Professional Corporation
1875 Century Park E Ste 700
Los Angeles, CA 90067
(310) 286-2100
Email: msr@rosenblumlaw.net

Neil M. Sunkin, SBN 153868
LAW OFFICE OF NEIL M. SUNKIN,
A Professional Corporation
22908 Gershwin Dr.
Woodland Hills, CA 91364
(818) 876-9975
Email: nms@sunkinlaw.com

Attorneys for Defendants
TARPON BAY PARTNERS, LLC and
SOUTHRIDGE ADVISORS, II, LLC; and
Specially Appearing Defendant STEPHEN M. HICKS

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ZEREZ HOLDINGS CORPORATION, an Oklahoma corporation,<br><br>Plaintiff,<br><br>vs.<br><br>TARPON BAY PARTNERS, LLC, a Florida limited liability company; SOUTHRIDGE ADVISORS II, LLC, a Delaware limited liability company; STEPHEN M. HICKS, and DOES 1-25,<br><br>Defendants. | CASE NO. 2:17-CV-00029-TLN-DB<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER F.R.C.P 12((b)(6)**<br><br>Date: June 15, 2017<br>Time: 2: p.m.<br>Courtroom: 2 |

# TABLE OF CONTENT


1. INTRODUCTION……….………………………………………………………… 1

2. PLAINTIFF'S FIRST TO FILE ARGUMENT IS IRRELEVANT AND NONSENSICAL.…..…………………………….............................................1

3. THE FAC FAILS TO ALLEGE A SECURITIES FRAUD CLAIM.…...………….....1

   A. Plaintiff misunderstands the security fraud statute.………………………….. 1

   B. Plaintiff lacks standing to allege its purported securities fraud claim.............3

   C. There is no loss causation or economic loss alleged.…………..……………..4

   D. Plaintiff admits it cannot plead scienter; dismissal is required....……………6

   E. Plaintiff's additional facts show the motion should be granted.…...…………7

   F. Plaintiff fails to allege facts on conspiracy.…...……………………………...9

4. THE STATE LAW CLAIMS SHOULD BE DISMISSED.……...…………………… 9

   A. Breach of Implied Contract.…...…………………………………………….. 9

   B. Declaratory Relief.…...……………………………………………………….. 9

   C. Breach of Fiduciary Duty Claim.…...……………………………………….. 9

   D. Usury.…...……………………………………………………………………10

   E. Rescission.…...………………………………………………………………..10

   F. Bus. & Prof. Code § 17200.…...……………………………………………..10

5. CONCLUSION.…...………………………………………………………………10

# TABLE OF AUTHORITIES

**Cases**

*Bank of the West v. Sup. Ct.* (1992) 2 Cal.4th 1254 .......... 10

*Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S 723 .......... 1, 3

*Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York* (S.D.N.Y.1992) 808 F.Supp. 213 .... 9

*Copperweld Corp. v. Independence Tube Corp.* (1984) 467 U.S. 752 .......... 9

*E.I. Dupont de Nemours & Co.* (4th Cir. 2011) 637 F.3d 435 .......... 7

*Ernst & Ernst v. Hochfelder* (1976) 425 U.S. 185 .......... 7

*Glazer Capital Management, LP v. Magistri* (9th Cir. 2008) 549 F.3d 736 .......... 6

*In re NVIDIA Corporation Securities Litigation* (9th Cir. 2014) 768 F.3d 1046 .......... 6, 8

*In re Omnicare, Inc. Securities Litigation* (6th Cir. 2014) 769 F.3d 465 .......... 6

*Makor Issues & Rights, Ltd. v. Tellabs Inc.* (7th Cir. 2008) 513 F.3d 702 .......... 6

*McGee v. Sentinel Offender Servs., LLC* (11th Cir. 2013) 719 F.3d 1236 .......... 6

*Morrison v. People of State of California* (1934) 291 U.S. 82 .......... 9

*Schneider v. Calif. Dept. of Corrections* (9th Cir. 1998) 151 F.3d 1194 .......... 4

*Securities Corp. v. Inspire Ins. Solutions, Inc.* (5th Cir. 2004) 365, F.3d 35 .......... 6

*Shah Rahman v. Kids Brand, Inc.* (3rd Cir. 2013) 736 F.3d 237 .......... 6

*Von Saher v. Norton Simon Museum of Art at Pasadena* (9th Cir. 2010) 592 F.3d 954 .......... 5

**Statutes**

15 U.S.C. § 78j .......... 2

Cal. Civil Code § 17200 .......... 10

Section 10(b) of the Securities Exchange Act of 1934 .......... passim

**Rules**

17 C.F.R. § 240.10b-5 .......... 1

Rule 10b-5 .......... 2, 3, 4

**1. <u>Introduction</u>.**

The Opposition affirmatively shows that all of the purported claims in the First Amended Complaint ("FAC") should be dismissed. Plaintiff makes irrelevant arguments; is confused about the securities statute; has not alleged facts on each element of the claims; relies on new purported facts not in the FAC; and ignores Connecticut law, which governs certain claims.

**2. <u>Plaintiff's First to File Argument is Irrelevant and Nonsensical</u>.**

Whether or not the first-to-file rule precludes defendants' action *in Connecticut* does not affect the lack of merit to the purported claims in the FAC.[1]

**3. <u>The FAC Fails to Allege a Securities Fraud Claim</u>.**

**A. <u>Plaintiff misunderstands the security fraud statute</u>.**

Plaintiff misunderstands the securities laws. Section 10(b) of the Securities Exchange Act of 1934 *does not contain a cause of action different from that of Rule 10b-5.* The elements of the claim under Section 10(b) of the Exchange Act are not different from those Plaintiff acknowledges are required to be alleged under Rule 10b-5[2] (Opp., p. 10, ll. 23-24), and the specificity standards required by Federal Rule of Civil Procedure 9(b) and the PSLRA must be satisfied. Section 10(b) of the Exchange Act is not self-effecting. *See*, *Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S 723, 729 ("Section 10(b) of the 1934 Act does not, by its terms, provide an express civil remedy for its violation.") Rather, Section 10(b) of the Exchange Act requires the SEC to prescribe rules to implement it; and Rule 10b-5 is one such rule. *See, id.*

---

[1] The argument that the complaint filed in Connecticut *should have been* brought as counterclaim in this case is nonsensical. Plaintiff's FAC is subject to a motion to dismiss, and Defendants have not filed an Answer herein.

[2] Compare the language of Rule 10b-5to Plaintiff's statement in the Opposition at p. 9, ll. 20-26. 17 C.F.R. § 240.10b-5 states:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
> (a) To employ any device, scheme, or artifice to defraud,
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Section 10(b), which Plaintiff incorrectly paraphrases and fails to cite, in relevant part provides that it is unlawful to …[t]o use or employ, in connection with the purchase or sale of any security … or deceptive device or contrivance *in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors*. 15 U.S.C. § 78j (emphasis supplied). Thus, Plaintiff's effort to "match" allegations in the FAC with the clauses in Rule 10b-5 -- which Plaintiff mistakenly believes are elements of a claim under Section 10(b) of the Exchange Act-- is misguided.

Moreover, Plaintiff's own descriptions of its claims, stated in various different ways, show that this case is not "in connection with the purchase or sale" of a securities; that this is not a securities fraud case. The Opposition validates that what Plaintiff attempts to allege is common law fraud, breach of contract, and failure of consideration. Plaintiff states in page 5 of the Opposition:

> Zerez's claims arise out of the California Defendants' financial advisory services that were allegedly designed to "clean up" Zerez's balance sheet by converting its then-substantial debt into equity, thereby making Zerez more attractive to future investors. Defendants fraudulently induced Zerez to agree to a transaction, pursuant to Section 3(a)(10) of the Securities Act of 1933, by which Tarpon would: (a) purchase Zerez's debt from its creditors' (b) promptly commence a lawsuit against Zerez on those obligations; and then (c) seek prompt court approval, at a fairness hearing, to settle its claims against Zerez. The terms of the "settlement" were to include Zerez issue unregistered shares of common stock to Tarpon, in return for which Zerez's debts would be cancelled. As part of the Section 3(a)(10) transaction, Zerez was to issue a convertible promissory note to Tarpon for its services. The FAC alleges that Defendants failed, among other things, to seek court approval for the settlement of Zerez's debts, thereby breaching the parties' agreement.[3]

Plaintiff's Opposition demonstrates that the liability and injuries with which Section 10(b) and Rule 10b-5 are concerned are not that which Plaintiff describes. Rather, Plaintiff's descriptions show injury is to classes of persons who would not have standing under the statue and rule.

---

[3] Plaintiff also describes the real gist of the complaint:

> Tarpon procured a Promissory Note from Plaintiff when Southridge entered into the Term Sheet with Plaintiff. Defendants plan was to obtain a "Signing Fee" in order to pay for the expenses associated with the 3(a)(1) transactions which Defendants promised Plaintiff would eliminate Plaintiff's debt. Zerez entered into this transaction based on the Defendants fraudulent misrepresentation that Defendants would perform. (Opp. 10., ll. 6-10.)

Moreover, the Opposition demonstrates that the pleading standards to state Plaintiff's purported securities fraud claim are not satisfied in the FAC, and that they cannot be.

**B. Plaintiff lacks standing to allege its purported securities fraud claim.**

By its terms, Section 10(b) pertains to "investors" ("for the protection of investors"). In *Blue Chip Stamps*, the Supreme Court, reviewing the legislative history of the statute said the statute does not provide a remedy to persons who neither purchased nor sold securities, and it does not apply to "attempts" to purchase or sell securities:

> In 1957 and again in 1959, the Securities and Exchange Commission sought from Congress amendment of 10(b) to change its wording from "in connection with the purchase or sale of any security" to "in connection with the purchase or sale of, *or any attempt to purchase or sell*, any security." In the words of a memorandum submitted by the Commission to a congressional committee, the purpose of the proposed change was "to make section 10(b) also applicable to manipulative activities in connection with any attempt to purchase or sell any security." … *Neither change was adopted by Congress*. **When Congress wished to provide a remedy to those who neither purchase nor sell securities, it had little trouble in doing so expressly**.

421 U.S. at 731-34 (citations and internal quotes omitted, emphasis supplied). Plaintiff's allegations of "attempts to" purchase and "intent" to sell securities are not within the coverage of Section 10(b).[4]

Further, *Blue Chip Stamps* observed that a class of plaintiffs who do not have standing under Section 10(b) and Rule 10b-5 are *existing* "shareholders, creditors, and perhaps others related to an issuer who suffered loss in the *value* of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b-5." *Id.* at 738. The Opposition confirms that the purported securities fraud claim is to remedy damage to the *value of the company* which Plaintiff says harms *creditors* and *existing* shareholders. Plaintiff states:

> Defendants committed securities fraud when they *devised a plan to obtain Zerez … shares for no consideration* and carried out their plan *with the intent to deceive*

---

[4] For example, Plaintiff sums up its allegations stating, "Tarpon's attempt to gain title to Zerez shares…constitutes fraud" (Opp., p. 5, l. 7); "Hicks control of Tarpon and Southridge and his attempt to manipulate both entities to gain access to Zerez shares constitutes fraud." (*Id.* ll. 9-11) Hicks…. intended to acquire Zerez shares" (*id.*, p. 9, ll. 10-12); "attempted to convert [the convertible promissory note] into Zerez shares" (*id.*, p. 10, ll2-3); and "Tarpon attempted to fraudulently acquire Zerez shares". (*Id.*, l. 20.)

*the investing public*, including Zerez *and its creditors*.

(Opp., p. 1, ll. 5-7.)[5] Further demonstrating that the claim is not for which there is liability under Section 10(b) or Rule 10b-5 and that Plaintiff has no standing under these laws, Plaintiff argues that the transaction at issue was focused on cleaning up the company's balance sheet to improve the value of the company and attract investment.[6] Plaintiff argues investors' "stock decreased in value over the nine month period it was involved with defendants."(*Id.*, p. 13, ll. 19-20.) The harm Plaintiff claims to have suffered "never realized any value from Southridge's financial advisory services and derived no value from Tarpon on either the Term Sheet or Promissory Note" (*id.*, ll. 21-23) is not harm that is compensable under Section 10(b) and Rule 10b-5. The injuries Plaintiff describes are not those reached by this law; and the transactions Plaintiff describes are not "in connection with a purchase or sale" of securities.

**C. There is no loss causation or economic loss alleged.**

As to economic loss, admitting that the FAC contains no allegations of economic loss, Plaintiff supplies entirely new allegations. Plaintiff refers to a "dwindling stock price", provides new allegations of the stock prices at different times, and surmises a conclusion that the price declined when Plaintiff was generally "involved with Defendants". (Opp. at pp. 12-14.) None of this can save the defects in the FAC, as the Court cannot consider these new facts. *See*, *Schneider v. Calif. Dept. of Corrections* (9th Cir. 1998) 151 F.3d 1194, 1197. Moreover, none of this is tied to any particular misrepresented or concealed fact. There could be many reasons unrelated to "involvement" with Defendants that impacted the stock price. As to economic loss, Plaintiff also adds that it "never realized any value" from "Southridge's financial advisory

---

[5] In the FAC Plaintiff alleges that Hicks "targeted penny stock companies" and used information obtained "to gain shares through Tarpon at a discounted rate and sell them on the open market *to the detriment of the company, its shareholders and the public"*. (FAC,¶ 38). Plaintiff emphasizes that "the sole purpose of Plaintiff's dealings with Defendants was to remove Plaintiff's debt *and make Plaintiff more attractive to investors*." (Opp., p.14, ll. 5-6, *citing* FAC, ¶ 37).

[6] Plaintiff argues: "[t]he purpose of the Term Sheet was to help Zerez get rid of its debt so they would be favorable to investors and with that, see an increase in their stock price. Instead, their stock decreased in value over the nine month period it was involved with defendants."(Opp., p. 13, ll. 18-19).

services and derived no value from Tarpon on either the Term Sheet or Promissory Note." (Opp., p. 13, ll. 21-23.) Aside from the fact that this new "allegation" cannot be considered, whether or not Plaintiff received "value" from Southridge's services is not injury compensable under the Section 10(b) and Rule 10b-5. If it were, every garden variety breach of contract in which shares of stock is consideration for services rendered would be twisted into a securities fraud claim.

As to causation, Plaintiff refers to "defendants" misrepresentation that they would "help" Zerez "get rid" of its debt and this led Plaintiffs to execute the Term Sheet. (*Id*. p. 10, ll. 122-23). Again, adding new allegations (that cannot be considered on the motion), Plaintiff argues it didn't seek additional financing to pay its debt, having relied on defendants to clean its balance sheet. Plaintiff says this was because Defendants did not successfully execute the 3(a)(10) transactions (that is presumably obtaining court approval of agreements to convert debt into equity), the debt was not reduced, and the stock price declined "making Plaintiff less attractive to investors and lenders". (*Id*., p. 14, ll. 6-12.) This contradicts facts alleged in the FAC, namely that Tarpon *did* try to "help" Zerez clean its balance sheet, as the FAC alleges that Tarpon entered into agreements with Plaintiff's creditors to purchase their debt. (FAC ¶ 50.) Additionally, the Court need not accept as true allegations that contradict facts which may be judicially noticed. *Von Saher v. Norton Simon Museum of Art at Pasadena* (9th Cir. 2010) 592 F.3d 954, 960; and of course the Court takes judicial notice of the pleadings filed in this case. Plaintiff admits that Tarpon did seek court approval of the agreements to convert the debt into equity. (Declaration of Tamara Leetham, Exhibit 5, ¶ 18, filed herein in support of Plaintiff's opposition to motion to transfer venue (Document 28)).

Plaintiff argues its reliance was reasonable -- illogically -- based on "actions prior to and after signing of the Term Sheet." (Opp., p.12, l. 25-p. 13, l. 7.)) The "prior" actions are 'cold calls' from strangers seeking Plaintiff's business *that have nothing to do with this case and are unrelated to any party in this case*. Logically, events that occurred *after* the Term Sheet was signed could not have caused Plaintiff to sign the Term Sheet, could not have been relied upon

by Plaintiff to sign the Term Sheet, and certainly could not justify reliance. The argument is ludicrous.

Moreover, Plaintiff makes a telling admission that further shows the weakness of the claims. According to Plaintiff, had it known of the SEC's and Connecticut's allegations against Hicks, what it would have done differently is only this: it would "have viewed Defendants' promises with skepticism." (*Id.*, p. 13, l. 7.)

**D. <u>Plaintiff admits it cannot plead scienter; dismissal is required</u>.**

Acknowledging that it has not plead scienter with the requisite degree of specificity, Plaintiff argues instead that the "doctrine of collective scienter" should apply. The Ninth Circuit has not adopted this doctrine, and never applied it. *See, In re NVIDIA Corporation Securities Litigation* (9th Cir. 2014) 768 F.3d 1046, 1063; *Glazer Capital Management, LP v. Magistri* (9th Cir. 2008) 549 F.3d 736, 743 ("Our circuit has not previously adopted a theory of collective scienter".) Discussing application of the doctrine, *Glazer* refers to a *hypothetical* discussed in a Seventh Circuit case, and comments that if the doctrine were to apply, it would be in the context of false public statements made and "those statements were so important and so dramatically false that they would create a strong inference that at least *some* corporate officials knew of the falsity upon publication." *Id.* at 744 (emphasis in original)[7]. The hypothetical was:

> Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false."

549 F.3d at 743, *citing Makor Issues & Rights, Ltd. v. Tellabs Inc.* (7th Cir. 2008) 513 F.3d 702, 710.

That hypothetical certainly is *not* our case.[8] Here no public statements are involved.

---

[7] *Glazer* also points out that other circuits (the Fifth and Eleventh) have rejected the doctrine. *Id.* at 743-744, *cf.*, *McGee v. Sentinel Offender Servs., LLC* (11th Cir. 2013) 719 F.3d 1236, fn. 9 (skeptical of the doctrine); *Southland Securities Corp. v. Inspire Ins. Solutions, Inc.* (5th Cir. 2004) 365, F.3d 353, 366. Additionally, more recently other circuits have rejected application of the doctrine. *See, Shah Rahman v. Kids Brand, Inc.* (3rd Cir. 2013) 736 F.3d 237, 246; *In re Omnicare, Inc. Securities Litigation* (6th Cir. 2014) 769 F.3d 465, 475-476.

[8] Plaintiff appears to conflate a theory of alter ego, which has not been adequately alleged in the FAC,

Instead Plaintiff's purported claim is about a private business transaction, contract that Plaintiff asserts was not performed; or information not disclosed as to the ownership of defendants; or the involvement of a *disclosed* agent; or whether a proposed transaction was "unlawful" -- all of which is contradicted by allegations of the FAC or facts of which the Court can take judicial notice.

Since Plaintiff acknowledges that pleading scienter as to each defendant is required and Plaintiff admits that it cannot so plead without the aid of a doctrine that has not been approved by the Ninth Circuit and in any event, certainly would not be applicable in this case, the Court must grant the motion as to the securities fraud claim.

**E. <u>Plaintiff's additional facts show the motion should be granted.</u>**

Plaintiff now asserts as a misrepresentation that when Southridge proposed to clean Plaintiff's balance sheets by removing its debt using a 3(a)(10) transaction, it did so "knowing it was engaging in illegal conduct." (Opp., 11, ll. 10-13.) This new fact is not considered by the Court and like all new allegations is irrelevant. *E.I. Dupont de Nemours & Co.* (4th Cir. 2011) 637 F.3d 435, 449-450; *Schneider*, *supra*. Even if considered, the new allegation would be defective. There is no explanation of *what specifically* was "illegal conduct"; Plaintiff does not tie this purported misrepresentation to a loss; and the allegation lacks plausibility: there is no explanation as to why Plaintiff could not have determined itself (or through counsel) whether or not the proposed transaction was "legal".

Plaintiff also asserts that the motion does not show that Hicks disclosed "he was Tarpon". According to Plaintiff, this is the "crux" of Plaintiff's claims, as Hicks under the guise of Southridge, gave investment advice and acquired material information from Zerez." (Id., ll. 19-24.) There is no allegation in the FAC that Hicks "gave investment advice". In fact, the FAC

---

with "collective scienter". As discussed in the motion, Plaintiff has not plead *facts* on alter ego. Plaintiff's scienter argument also puts the cart before the horse. Plaintiff asserts scienter is established "because" purported misrepresentations were made upon execution of the Term Sheet bearing Hicks' signature, which provides for Tarpon Bay to purchase Zerez' debt. Nothing about this even relates to a "mental state embracing intent to deceive, manipulate, or defraud". *Ernst & Ernst v. Hochfelder* (1976) 425 U.S. 185, 193, n. 12. Hick's agency relationship is disclosed, and there is nothing untoward or even remarkable about Tarpon's role as stated in the Term Sheet.

alleges and the Opposition asserts "that the sole purpose of Plaintiff's dealings with Defendants was to remove Plaintiff's debt". (*Id*., p. 14, ll. 5-6, citing FAC, ¶ 37.) Moreover, on its face, the Term Sheet shows that the relationship involved a buyer/seller commercial transaction, which includes *that Tarpon would sue Zerez*. Also, there is not a hint of what "material information" Plaintiff refers to, or why and how it was "material". Further, since the FAC alleges that Zerez's stock is sold in a public market (and thus its financial information is publicly available from the company's SEC filings), Plaintiff's allegation would be implausible. In any event, there is no allegation that any defendant purchased or sold shares based on secret, non-public information. And that allegation could not be made because, again, the FAC and Opposition refer to "attempts" to obtain stock and an "intent" to sell stock (that never had been acquired). Further, the Convertible Note was merely payment for services and reimbursement for expenses. Finally, the allegations are dependent on an alter ego relationship, as to which no facts are alleged, and certainly no facts sufficient to satisfy the heightened pleading requirements to plead securities fraud.

As the Ninth Court recently said in *In re NVIDIA Corp.* at 1056, "for purposes of Section 10(b) and Rule 10b–5, material information need not be disclosed unless omission of that information would cause other information that is disclosed to be misleading." *Plaintiff entirely fails to address this argument made in the motion to dismiss.* Plaintiff does *not* allege or even argue that there was a legal duty to make the disclosures of information Plaintiff claims was concealed. There are no allegations that Plaintiff asked about Hicks after seeing his name as the signatory for Southridge and Plaintiff does not allege that any statement had been made about Hicks' involvement or about existing SEC or Connecticut litigation or investigations such that other information would have been required to have been disclosed to make the statements true.

In a new twist on its claim and based on facts not alleged in the FAC (and which cannot be considered on the motion), Plaintiff suggests its claim is one for 'promissory fraud', arguing "Plaintiff believes that Defendants never intended on performing but did intend on acquiring Zerez securities in violation of law." (Opp., p. 12, ll. 1-2.). Plaintiff's "belief" purportedly is

justified based on nothing but the fact that "Defendants" promised to perform, did not perform, and "Tarpon's and/or Southridge" assurance that "it" would seek court approval, and subsequent request for conversion of the convertible note (after Plaintiff had refused to pay it). (Id. p. 11, l. 27-p. 12, l. 2). As discussed above, however, the FAC and Plaintiff's arguments contradict other allegations in the FAC.

**F. <u>Plaintiff fails to allege facts on conspiracy</u>.**

Plaintiff states that Defendants have ignored its assertion that the conspiracy to defraud Plaintiff was conducted by three interrelated parties, Hicks who is Tarpon and Hicks who is Southridge". (Opp. p. 11, ll. 5-6.) Plaintiff also asserts that Hicks and Tarpon are one and the same and Hicks and Southridge are one and the same; and they all are interrelated. This argument demonstrates that Plaintiff has not alleged a "conspiracy". One cannot conspire with oneself, e.g., *Morrison v. People of State of California* (1934) 291 U.S. 82, 92, and an officer cannot conspire with the corporation for which he acts as an agent, because that is merely unilateral action, *Copperweld Corp. v. Independence Tube Corp.* (1984) 467 U.S. 752, 770–771. Accordingly, as a matter of law there is no conspiracy here. Further, the elements of conspiracy must be alleged with specificity; merely "asserting" a conspiracy is not sufficient. *See, Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York* (S.D.N.Y.1992) 808 F. Supp. 213.

**4. <u>The State Law Claims should be Dismissed</u>.**

**A. <u>Breach of Implied Contract</u>**. Plaintiff does not respond to any of the arguments in the Motion. Further, as shown above, Tarpon did execute claim services agreement and did seek court approval of the settlements.

**B. <u>Declaratory Relief</u>.** Plaintiff's use of Defendants' arguments in the Motion is an admission that the FAC does *not* contain sufficient allegations and that the purported claim is *not* clearly stated. Further, Plaintiff does not address the arguments in the motion to dismiss.

**C. <u>Breach of Fiduciary Duty Claim</u>.** To show an alter ego relationship between Hicks and Southridge, which Plaintiff acknowledges is the sole basis for a fiduciary duty between Hicks and Plaintiff, Plaintiff relies *solely* on Hick's signature as a *disclosed agent* on the

Term Sheet. But this fact shows that Defendants respect the separateness of Hicks and Southridge! Moreover, on its face, the Liability Purchase Agreement Confidential Term Sheet *does not* create a confidential relationship and is not a contract for investment advisory services; it provides for the purchase of debt, approval of the purchases by a court and issuance of stock "pursuant to a court approved settlement" in a lawsuit in which Tarpon sues Plaintiff. Certainly that is not a confidential relationship or a relationship in which Plaintiff is receiving investment advice.

**D. Usury.** The conversion of the Note, including interest due on it, into shares of stock was pursuant to the terms of the note which is governed by Connecticut law, not California law. Accordingly, the claim -- based on California law -- must be dismissed. Further, Plaintiff never received money from a Defendant, so there is not "charge" for money lent.

**E. Rescission.** Plaintiff is not offering by the Complaint to restore benefit received; instead Plaintiff claims entitlement to performance of the Term Sheet.

**F. Bus. & Prof. Code § 17200.** Only a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition" can prosecute a § 17200 claim. Cal. Civil Code § 17200, *et seq*. Plaintiff's argument shows it seeks damages as compensation for the drop in the value of its company, but damages are not available for this claim. *See Bank of the West v. Sup. Ct.* (1992) 2 Cal.4th 1254, 1266.

**5. Conclusion.**

For all of the foregoing reasons and those stated in the Motion, the FAC should be dismissed.

Dated: June 7, 2017

LAW OFFICES OF MICHAEL S. ROSENBLUM,
A Professional Corporation
and
LAW OFFICE OF NEIL M. SUNKIN,
A Professional Corporation

By: /S/ Neil M. Sunkin, Esq.
Attorneys for Defendants TARPON BAY, LLC and SOUTHRIDGE ADVISORS, II, LLC; and Specially Appearing Defendant STEPHEN M. HICKS